IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GENNADIY SEVCHUK,

                    Petitioner,

          vs.

MARION SPEARMAN, Warden,
Correctional Training Facility, Soledad,[1]

                    Respondent.

No. 2:12-cv-02857-JKS

MEMORANDUM DECISION

Gennadiy Sevchuk, a state prisoner proceeding *pro se*, filed a Petition for a Writ of

Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Sevchuk is in the custody of the

California Department of Corrections and incarcerated at the Correctional Training Facility in

Soledad, California.  Respondent has answered, and Sevchuk has replied.  Also pending before

this Court is the petition for habeas relief filed by Sevchuk's co-defendant, Mariya Stepanov, in

*Stepanov v. Miller*, Case No. 2:12-cv-02644-JKS.  Sevchuk's Petition raises many of the same

issues raised in Stepanov's case.

## I. BACKGROUND/PRIOR PROCEEDINGS

On April 3, 2006, Sevchuk, along with co-defendants Stepanov and Maksim Isayev, was

charged with the first-degree murder of Dmitriy Paskar.  The information alleged as a special

circumstance that the defendants intentionally killed Paskar while lying in wait.  It further

alleged that Isayev personally used and discharged a firearm and that Sevchuk and Stepanov

---

[1]      Marion Spearman, Warden, Correctional Training Facility, Soledad, is substituted
for Matthew Cate, former Secretary of the California Department of Corrections and
Rehabilitation.  FED. R. CIV. P. 25(c); Rule 2(a), Rules Governing Section 2254 Cases in the
United States District Courts; *Stanley v. Cal. Supreme Court*, 21 F.3d 359, 360 (9th Cir. 1994).

were vicariously armed with the shotgun in the commission of the murder.  On direct appeal of

Sevchuk's conviction, the Court of Appeal recounted the following facts underlying the murder

charge:

> The events surrounding this murder began when the victim slept with defendant
> Stepanov and then bragged about it.  Stepanov was very upset and told defendant Isayev,
> her former boyfriend, what had happened. Isayev told his friend, defendant Sevchuk.
> Defendant Sevchuk bought ammunition for Isayev's shotgun and loaded the gun.
> Isayev, Sevchuk and others drove to the victim's home, intending to shoot the victim
> when he came out of his house.  However, when the victim made his appearance, he was
> accompanied by his girlfriend and the assault did not occur because defendants did not
> want any witnesses.
> Isayev called Stepanov to report this kink in the plans, and told her to call the
> victim to make arrangements to meet him late that night at a park.  Stepanov did so.
> When Isayev and Sevchuk drove up, Isayev saw the victim and Stepanov standing close
> to together; the victim reached for Stepanov and groped her.  Isayev got out of the car,
> retrieved his loaded shotgun from the trunk, and approached the victim, asking Stepanov
> if this was "the guy."  When Stepanov nodded, Isayev shot the victim twice and killed
> him.

*People v. Isayev*, No. C055417, 2011 WL 2848584, *1 (Cal. Ct. App. July 19, 2011).

The defendants pled not guilty to the charge and denied the allegations.  They were

jointly tried before separate juries.  At trial, Isayev admitted shooting the victim, but he asserted

that it was in the heat of passion or due to provocation and he was therefore guilty only of

voluntary manslaughter.  Stepanov claimed that she only wanted the victim to apologize and be

punished, and she never intended Isayev to kill Paskar.  Sevchuk asserted that, although he was

at the scene of the murder, he was drunk and uninvolved in any plan to kill the victim.  The

primary issues at trial were thus: 1) whether the murder was premeditated; and (2) whether

Sevchuk and Stepanov were liable as aiders and abettors for a murder that was the natural and

probable consequence of an intended assault.

Evidence was presented at trial regarding Isayev's reputation as a violent and jealous person.  It was also established that Sevchuk and Stepanov knew that Isayev had a gun and had previously been involved in shooting incidents arising from jealousy.  Witnesses described hearing Isayev brag about the murder and make statements such as "[W]henever I do anything, I do it 100 percent. I know what I'm doing."  He told one witness that he had aimed for the victim's head and killed him to stop him from raping girls.

Mikalai Yarmaliuk, the person who first drove the car to the victim's house, also testified for the prosecution.  Yarmaliuk described Sevchuk loading the shotgun, the plan to shoot the victim, the phone conversations between Isayev and Stepanov, and Isayev's past violent conduct.  Yarmaliuk had suffered head injuries in an earlier accident, and the defendants challenged his memory, emphasizing the inconsistencies in his testimony and his general credibility.

On March 13, 2007, Sevchuk's jury found him guilty of second-degree murder and found true the allegation that he was vicariously armed with a shotgun.[2]  The trial court subsequently sentenced him to 15 years to life imprisonment, enhanced by one year for being vicariously armed with the shotgun.[3]

Through counsel, Sevchuk appealed his conviction, arguing that: 1) the trial court failed to properly instruct the jury on the presumption of innocence and the prosecution's burden of

[2]     Stepanov's jury also found her guilty of second-degree murder and found true the allegation that she was vicariously armed with a shotgun.  Isayev's jury found him guilty of first-degree murder and found true the allegation that he personally used and discharged a shotgun as well as the special circumstance that he murdered Paskar while lying in wait.

[3]     Stepanov was also sentenced to 15 years to life imprisonment, enhanced one year for being vicariously armed with a shotgun.  Isayev was sentenced to life imprisonment without the possibility of parole, enhanced 25 years to life for the personal use and discharge of the shotgun.

proof beyond a reasonable doubt; 2) the court erred by instructing the jury on the natural and

probable consequences doctrine and defining simple assault as a target offense; 3) the trial court

abused its discretion and denied Sevchuk due process when it refused to exclude evidence of

another shooting; 4) the jury was erroneously instructed as to the burden of proof required for the

consideration of prior bad acts; 5) the trial court should have instructed the jury on the lesser-

included offense of misdemeanor manslaughter; 6) jurors committed misconduct when they read

a newspaper article during deliberations; and 7) cumulative error warranted reversal of his

conviction.  Sevchuk also joined in the arguments raised by his co-defendants, who also

appealed their convictions.  On July 19, 2011, the California Court of Appeal struck one fine

levied against Isayev but otherwise affirmed the convictions in all respects in a reasoned,

unpublished opinion.  *Isayev*, 2011 WL 2848584, at *26.  Sevchuk petitioned for review in the

California Supreme Court, raising his claims that the trial court erred by using simple assault as a

target offense under the natural and probable consequences doctrine, the trial court erred by

failing to exclude evidence of a dissimilar shooting, the trial court erred in failing to instruct the

jury on the lesser-included manslaughter offenses, and the jurors committed misconduct during

deliberations. He also joined in the arguments asserted by Stepanov and Isayev.  The Supreme

Court summarily denied review with respect to all defendants on October 26, 2011.

Sevchuk then filed in the state supreme court a petition for a writ of habeas corpus.  In

that petition, he argued that: 1) trial counsel was ineffective for failing to adequately interpret

unidentified "vital American English words" prior to trial and failing to adequately consult with

him regarding the consequences of rejecting a plea deal; 2) trial counsel was ineffective for

failing to inform him that he would be deported if found guilty at trial; and 3) appellate counsel

4

was ineffective for failing to raise "several vital issues" on direct appeal.  The state supreme court denied relief without comment on July 5, 2012.

Sevchuk timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on November 15, 2012.  In his Traverse, Sevchuk requests an evidentiary hearing and the appointment of counsel.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Sevchuk argues that: 1) his conviction was obtained by the trial court's wrongful use of simple assault as the target offense under the natural and probable consequences doctrine; 2) the trial court failed to exclude evidence of a dissimilar shooting; 3) the trial court should have instructed the jury on the lesser-included offenses of voluntary and involuntary manslaughter; and 4) the jury committed misconduct during deliberations; 5) defense counsel was ineffective during plea negotiations.  He also joins in any successful arguments raised by his co-defendants on federal habeas review.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

5

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's

6

findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear

and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340

(2003).

IV. DISCUSSION

A.      *Erroneous Instructions* (Grounds 1-2)

        Sevchuk first argues that the trial court made two errors with respect to its charges to the

jury.  Because jury instructions in state trial are typically matters of state law, federal courts are

bound by a state appellate court's determination that a jury instruction was not warranted under

state law.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (noting that the Supreme Court has

repeatedly held that "a state court's interpretation of state law, including one announced on

direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *see

also Williams v. Calderon*, 52 F.3d 1465, 1480-81 (9th Cir. 1995).  An instructional error,

therefore, "does not alone raise a ground cognizable in a federal habeas proceeding."

*Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1986) (citation omitted).

        A challenged instruction violates the federal constitution if there is a "reasonable

likelihood that the jury has applied the challenged instruction in a way that prevents the

consideration of constitutionally relevant evidence."  *Boyde v. California*, 494 U.S. 370, 380

(1990).  The question is whether the instruction, when read in the context of the jury charges as a

whole, is sufficiently erroneous to violate the Fourteenth Amendment.  *Francis v. Franklin*, 471

U.S. 307, 309 (1985).  This Court must also assume in the absence of evidence to the contrary

that the jury followed those instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000);

*Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the

law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

It is well-established that not only must the challenged instruction be erroneous but it must violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72. This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn. *Id.* at 72-73. "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation." *Id.* Where the defect is the failure to give an instruction, the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law. *See Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). In those cases, the inquiry is whether the trial court's refusal to give the requested instruction "so infected the entire trial that the resulting conviction violates due process." *See id.* at 156-57; *Estelle*, 502 U.S. at 72. Moreover, even if the trial court's failure to give the instruction violated due process, habeas relief would still not be available unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *California v. Roy*, 519 U.S. 2, 5 (1996).

     1.     Natural and probable consequence

Sevchuk first argues that the trial court misinstructed the jury on the natural and probable consequences doctrine by misstating California law and giving the instruction when it was not

supported by sufficient evidence.  The Court of Appeal denied Sevchuk's claim that the

instruction was contrary to state law for the following reasons:

> Defendant Sevchuk contends that the court erred in instructing the jury that aiding and abetting liability could be predicated on simple assault or battery as well as assault with a deadly weapon.  Defendant Stepanov joins this claim.  They assert that if, as the prosecution argued, defendants should have known that Isayev would use a gun to assault the victim, the crime defendants intended to aid and abet was assault with a deadly weapon, not either of the lesser offenses.  However, because the court instructed that the predicate offense could be simple assault or battery, the jury may have convicted defendants on one of these impermissible theories.  There was no error.

> Initially, we note that the prosecution argued a natural and probable consequences theory of liability for defendants Stepanov and Sevchuk.  In other words, although defendants may have intended to aid and abet only an assault or battery, their knowledge about Isayev gave rise to liability for murder as the natural and probable consequence of their intent to aid these lesser offenses.  Their claim on appeal seems inapplicable on its face—the predicate offense could in fact have been simple assault or battery, with liability for the greater crime arising from the application of a natural and probable consequences theory.  The court could therefore properly instruct the jury that simple assault or battery could be the predicate offense.

> Defendants' arguments are otherwise unpersuasive as well.  Citing cases such as *People v. Montes* (1999) 74 Cal.App.4th 1050, 1053–1054, defendants assert that instructions on simple assault as a predicate offense are proper only in situations involving escalating violence, such as in a gang dispute.  While a gang situation is indeed a common context for similar claims, defendants offer no authority for their apparent belief that assault can be a predicate offense only in these situations.  "A reasonably foreseeable consequence is to be evaluated under all the factual circumstances of the individual case [citation] and is a factual issue to be resolved by the jury."

> Defendants err in asserting that there was no evidence from which they "could have portended that a shooting would flow from a simple assault or battery."  As we have already discussed, the evidence established that a murder was the natural and probable consequences of an assault on the victim.  Even if Sevchuk and Stepanov intended that Isayev only assault or frighten the victim, both defendants knew of Isayev's violent background and how he reacted when jealous.  Sevchuk knew that Isayev had a gun in the trunk and Sevchuk bought the ammunition with which the gun was loaded.  Under these circumstances, there was ample evidence that the murder was a natural and probable consequence of whatever assault was planned.  The trial court's instructions were proper. This conclusion also disposes of Sevchuk's claim that the court erred in denying his motion for new trial on this issue.

*Isayev*, 2011 WL 2848584, at *11-12.

9

The Court of Appeal similarly rejected Sevchuk's and Stepanov's claim that there was insufficient evidence to support the theory that Paskar's murder was the natural and probable consequence of the planned assault:

> Defendant Stepanov knew Isayev owned a shotgun, told others that Isayev had previously shot at one of her former boyfriends out of jealousy, that Isayev had previously killed someone.  Defendant Sevchuk also knew that Isayev could be violent when jealous. Sevchuk participated with Isayev in the Kutsenko shooting, loaded the shotgun on the night of the murder and actively participated in the plan to shoot the gun at the victim outside of the victim's house.  Sevchuk drove to the park with Isayev, asked if he needed assistance, and saw Isayev go to the trunk of the car, where Sevchuk knew Isayev kept his shotgun.  Given this evidence, the jury could conclude that even if defendants Sevchuk and Stepanov intended to abet only an assault, the murder of the victim was a reasonably foreseeable consequence of that act.  Defendants' claims to the contrary are unavailing.

*Isayev*, 2011 WL 2848584, at *8.

As an initial matter, to the extent Sevchuk renews his claim that the court erred in instructing the jury on the natural and probable consequences theory of liability because it was not warranted under California law, such claim is not reviewable by this Court.  This Court is bound by the state court's determination that the natural and probable consequences doctrine may be circumscribed by simple assault or battery if the charged offense of murder was a reasonably foreseeable consequence of the commission of the simple assault or battery.  *See Bradshaw*, 546 U.S. at 76.  Likewise, to the extent such claim is reviewable based upon a potential denial of due process, it lacks merit as Sevchuk has not shown that the trial court committed error under state law, much less an error of constitutional magnitude.  *See Spivey v. Rocha*, 194 F.3d 971, 976-77 (9th Cir. 1999) (court's instruction on the natural and probable consequences theory of liability was consistent with California law and did not otherwise violate the defendant's right to due process and a fair trial); *see also Windham v. Merkle,* 163 F.3d 1092,

1104 (9th Cir. 1998) ("The jury was properly instructed that if it was persuaded beyond a reasonable doubt that [petitioner] was guilty as an aider and abettor of the contemplated felonious assaults that were committed against members of a rival gang, he would also be liable for the natural and probable consequences of those acts.  The trial court did not err in reading CALJIC 3.02 to the jury.").[4]

The thrust of Sevchuk's instructional error claim is that there was insufficient evidence to warrant a natural and probable consequences instruction, and thus insufficient evidence to convict him of murder, because he could not have reasonably foreseen that Isayev would shoot the victim.  As articulated by the Supreme Court in *Jackson*, the federal constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard).  This Court must therefore determine whether the California court unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.  *Jackson*, 443 U.S. at 318-19.  Rather, when "faced with a record of historical

---

[4]     The Court additionally notes that Sevchuk was convicted on an aiding and abetting, and not a felony-murder, theory.  As the Court of Appeal has explained, "[a]iding and abetting is a distinct theory of homicide.  Unlike the felony-murder theory, the question of guilt as an aider and abettor is one of legal causation.  'Thus, the ultimate factual question is whether the perpetrator's criminal act, upon which the aider and abettor's derivative criminal liability is based, was 'reasonably foreseeable' or the probable and natural consequence of a criminal act encouraged or facilitated by the aider and abettor.'"  *People v. Escobar*, 55 Cal. Rptr. 2d 883, 894 (Cal. Ct. App. 1994), *overruled on other grounds by People v. Mendoza*, 4 P.3d 265 (Cal. 2000).

facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76 ; *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *Schlup v. Delo*, 513 U.S. 298, 330 (1995). The United States Supreme Court has recently even further limited a federal court's scope of review under *Jackson*, holding that "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam). *Jackson* "makes

clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Id.* at 3-4.  Under *Cavazos*, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* at 4 (*quoting Renico v. Lett*, 559 U.S. 766, 773 (2010)).

In this case, determination of whether a crime is the natural and probable consequence of a target crime involves an objective, factual analysis.  *People v. Prettyman,* 926 P.2d 1013, 1039 (Cal. 1996).  The following factual analysis by the Court of Appeal is both reasonable and fully supported by the record:

> Defendant Sevchuk also knew that Isayev could be violent when jealous. Sevchuk participated with Isayev in the Kutsenko shooting, loaded the shotgun on the night of the murder and actively participated in the plan to shoot the gun at the victim outside of the victim's house.  Sevchuk drove to the park with Isayev, asked if he needed assistance, and saw Isayev go to the trunk of the car, where Sevchuk knew Isayev kept his shotgun.

*Isayev*, 2011 WL 2848584, at *8.

A jury could have reasonably concluded that, based on Sevchuk's knowledge and action, it was objectively foreseeable that Isayev would shoot Paskar.  Thus, the Court of Appeal's determination that "there was ample evidence that the murder was a natural and probable consequence of whatever assault was planned," *id.* at *12, was not unreasonable or contrary to federal law.  Sevchuk is therefore not entitled to relief on this claim in any event.

2.      Lesser-included offenses

Sevchuk additionally contends that the trial court should have instructed the jury on lesser included offenses.  Specifically, he renews his argument made on direct appeal that the

trial court erred in failing to sua sponte instruct on the lesser included offense of misdemeanor

manslaughter predicated on aiding and abetting Isayev's brandishing of the firearm.  The Court

of Appeal rejected this claim as follows:

> Isayev testified that he was upset when he arrived at the park and saw the victim with Stepanov, and was not thinking when he took the shotgun from the trunk of his car. As he walked toward the pair, he asked Stepanov, "Is this the guy?" and Stepanov nodded.  Isayev was carrying the gun straight down at his side, pointing it toward the ground.  He yelled at Stepanov to move away, and as soon as she did, he leveled the gun and shot the victim.  After the victim fell to the ground, he immediately reloaded and shot the victim a second time.
>
> At no time did Isayev threaten the victim with the gun; he simply aimed and fired. Because there was no evidence that Isayev brandished the weapon, there was no basis for the trial court to instruct sua sponte on misdemeanor manslaughter, nor was there a basis for defendant Sevchuk's attorney to request such an instruction.

*Isayev*, 2011 WL 2848584, at *16.

Sevchuk also asserts, as he and Stepanov did on direct appeal, that the trial court should

have instructed his jury on voluntary and involuntary manslaughter.  The Court of Appeal

rejected Sevchuk's and Stepanov's claims, reasoning:

> Defendant Isayev argued that he shot the victim out of provocation and heat of passion, and the court therefore instructed his jury on voluntary manslaughter. Defendants Stepanov and Sevchuk assert "[t]here is no reason why [defendants'] jurors should not have been given the option of finding her guilty of voluntary manslaughter also."  But there is: there was no evidence that defendants Stepanov or Sevchuk aided and abetted Isayev out of provocation or heat of passion.  While Stepanov was angry with the victim and Sevchuk was drawn into a plan to extract revenge for the perceived damage caused to Stepanov's reputation, nothing occurred at the time of the shooting to constitute provocation or heat of passion for either of these defendants.  Isayev asserted that he acted out heat of passion when he saw the victim grope Stepanov, but neither Stepanov nor Sevchuk testified that they had the same reaction.  Thus, while Isayev was entitled to an instruction on voluntary manslaughter, there was no evidence that Stepanov or Sevchuk acted out of heat of passion or provocation.  Without this evidence, the court had no obligation to instruct the Stepanov and Sevchuk juries on voluntary manslaughter.
>
> Defendants' argument is essentially a reframing of their claim that there was insufficient evidence for the jury to conclude that murder was a natural and probable consequence of an assault.  We have already rejected that claim and for the reasons stated, reject their claim here as well.

14

In a similar vein, defendants suggest that their juries should have been instructed on involuntary manslaughter because an assault or battery, or conspiracy to commit these crimes, can be a misdemeanor as well as a felony. This argument is again predicated on a claim that defendants could not have foreseen that Isayev would be armed. As noted, however, that predicate is faulty. This is not a situation like *People v. Woods*, supra, 8 Cal.App.4th at page 1588 in which we held that "in determining aider and abettor liability for crimes of the perpetrator beyond the act originally contemplated, the jury must be permitted to consider uncharged, necessarily included offenses where the facts would support a determination that the greater crime was not a reasonably foreseeable consequence but the lesser offense was such a consequence." (Italics and underlining added.) Here, the murder was a natural and probable consequence of an assault.

In short, if defendants Stepanov and Sevchuk were guilty at all, they were guilty of murder. There was no evidence to support a voluntary or involuntary manslaughter theory, and no basis for the trial court to instruct on these lesser included offenses.

Moreover, even if we were to assume otherwise, any error was harmless. The evidence overwhelmingly established that defendants set up the confrontation between Isayev and the victim at the deserted park and that defendants Stepanov and Sevchuk knew of Isayev's past history and violent reactions when jealous. There was no reasonable probability that the jury would have returned a more favorable verdict had the court included instructions on voluntary or involuntary manslaughter.

*Isayev*, 2011 WL 2848584, at *16-17.

The United States Supreme Court has held that the failure to instruct on a lesser included offense in a capital case is constitutional error if there was evidence to support the instruction. *Beck v. Alabama*, 447 U.S. 625, 638 (1980). The Supreme Court, however, has not decided whether to extend this rationale to non-capital cases. The Ninth Circuit, like several other federal circuits, has declined to extend *Beck* to find constitutional error arising from the failure to instruct on a lesser included offense in a non-capital case. *See Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000); *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998) ("[T]he failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question."); *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976) ("Failure of a state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding."). Accordingly, the decision of the

15

California courts denying Sevchuk relief as to this claim was not contrary to United States

Supreme Court authority as set forth in *Beck*.

Nevertheless, the Ninth Circuit has recognized that "the refusal by a court to instruct a

jury on lesser included offenses, when those offenses are consistent with defendant's theory of

the case, may constitute a cognizable habeas claim" under clearly established United States

Supreme Court precedent.  *Solis*, 219 F.3d at 929.  Here, however, as the Court of Appeal noted,

Sevchuk did not defend this case on a theory that he aided and abetted Isayev out of provocation

or heat of passion.  Because an instruction on the lesser included offenses was not consistent

with Sevchuk's defense and, as discussed by the Court of Appeal, was not supported by the

evidence, no due process violation arose from the failure to instruct the jury on the lesser

included offenses.  *See Bradley v. Duncan*, 315 F.3d 1091, 1098-1101 (9th Cir. 2002) (finding

federal due process violation where defendant's request for instruction on the only theory of

defense was denied); *Solis*, 219 F.3d at 929.

In addition to the possibility of demonstrating a due process violation based on the failure

to instruct on a theory of the defense, clearly established federal law provides that, in order to

establish a violation of his federal due process rights by the failure to give a requested jury

instruction, Sevchuk must demonstrate that the instruction should have been given, and that its

omission "so infected the entire trial that the resulting conviction violates due process."

*Henderson*, 431 U.S. at 154.  Here, Sevchuk has not carried this heavy burden because, as the

Court of Appeal noted, "[t]he evidence overwhelmingly established that the defendants set up

the confrontation between Isavey and the victim at the deserted park and that defendants

Stepanov and Sevchuk knew of Isayev's past history and violent reactions when jealous."

*Isayev*, 2011 WL 2848584, at *17.  It is thus clear that the failure to instruct in this regard could not have had any adverse effect whatsoever on the jury's decision, much less the "substantial and injurious effect" required to show the error was harmful.[5]  *Brecht*, 507 U.S. at 637.  Accordingly, Sevchuk is not entitled to relief on this instructional error claim.

B.      *Prior Bad Act* (Ground 3)

Sevchuk additionally contends that the trial court erred in admitting evidence that Isayev committed a drive-by shooting at the home of Roman Kutsenko, an unrelated victim, in the presence of Sevchuk.  The trial court concluded that the evidence was admissible as to Sevchuk because it "[wa]s relevant, at a minimum, to show . . . knowledge of Isayev's intent when they went looking for Paskar, that is, that Isayev meant to shoot Paskar."

On direct appeal, the Court of Appeal laid out the state law governing the admission of such evidence:

> [California] Evidence Code section 1101, subdivision (b) provides that evidence of other crimes is admissible to prove "some fact (such as motive, opportunity, intent, preparation, plan, knowledge identity, absence of mistake or accident . . . ) other than his or her disposition to commit such an act."  The admissibility of other crimes evidence falls along a continuum depending on the purpose for which it is offered.  Distinctive common marks between the charged and uncharged offenses are required to prove identity, "[a] somewhat lesser degree of similarity is required to show a common plan or scheme and still less similarity is required to show intent."  A trial court's ruling under

---

[5]      Other courts have admonished that harmless error review should not be confused with the sufficiency of the evidence inquiry required under *Jackson*, 443 U.S. at 324.  *See, e.g.*, *Jensen v. Clements*, 800 F.3d 892, 902 (7th Cir. Sept. 8, 2015) ("Time and time again, the Supreme Court has emphasized that a harmless-error inquiry is not the same as a review for whether there was sufficient evidence at trial to support a verdict.").  The Court's reliance on the overwhelming evidence against Sevchuk in finding that any error was harmless does not simply focus on the sufficiency of the other evidence, but rather properly "look[s] at the influence the improperly admitted [evidence] had on the verdict," in light of a "host of factors," including the overall strength of the prosecution's case.  *Id.* at *11.

Evidence Code section 1101 is subject to an abuse of discretion standard.  The same
standard applies to rulings under Evidence Code section 352.

. . . .

“““We have long recognized 'that if a person acts similarly in similar situations,
he probably harbors the same intent in each instance' [citations], and that such prior
conduct may be relevant circumstantial evidence of the actor's most recent intent.  The
inference to be drawn is not that the actor is disposed to commit such acts; instead, the
inference to be drawn is that, in light of the first event, the actor, at the time of the second
event, must have had the intent attributed to him by the prosecution.”””  The same is true
of evidence relating to motive.

*Isayev*, 2011 WL 2848584, at *4 (citations omitted).

The appellate court subsequently denied Sevchuk's claim that the evidence of the

Kutsenko shooting should have been excluded because the two events were not sufficiently

similar to be probative on the issues of intent and motive and the evidence was unduly

prejudicial and inflammatory:

Defendants focus on the factual differences between the charged offense and the
Kutsenko shooting, but fail to recognize the overarching similarities between the events.
In each case, a jealous Isayev used a gun to attack someone who had made advances to a
former girlfriend.  Notwithstanding the different particulars of each shooting, Isayev
reacted the same way in each case.  His violent behavior under the same general
circumstances was sufficiently similar to warrant admission under Evidence Code section
1101.

In a related argument, defendants contend that the probative value of this
evidence was minimal because the witnesses who testified about the Kutsenko shooting
were unreliable and gave conflicting and contradictory accounts of what occurred.  But
witness credibility is a matter for the jury's determination.  Defendants challenged the
witnesses and emphasized the discrepancies in their testimony.  The fact that the juries
resolved these credibility issues against defendants does not equate to error.

Defendants also contest the admissibility of the Kutsenko shooting under
Evidence Code section 352.  For the reasons just explained, we reject the claim that the
witnesses were so unreliable that their testimony should have been excluded.

Equally unavailing is the contention that evidence of the Kutsenko shooting was
highly inflammatory and unduly prejudicial.  This evidence, involving a drive-by
shooting at a residence in which no one was injured, is far less inflammatory than the
charged offense involving the close range shooting and murder of the victim.

In arguing otherwise, defendants note that Yarmaliuk identified Sevchuk as the
shooter in the Kutsenko incident, and assert that the jury was likely to be influenced "to
punish Sevchuk because of their emotional reaction to his earlier misconduct."  Thus,

they argue, the evidence was inflammatory.  We must disagree.  The jury knew that Sevchuk was involved in the Kutsenko shooting one way or the other and the jury certainly would not be more inclined to hold the incident against him if he was the shooter than if he was not.  This bit of testimony does not change our analysis of the admissibility of the evidence against him.

" '[All] evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial."  The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues.  In applying section 352 "prejudicial" is not synonymous with "damaging." ' "

The trial court acted well within its discretion in rejecting defendants' challenges and admitting evidence of the Kutsenko shooting.

*Isayev*, 2011 WL 2848584, at \*4-5 (citations omitted).

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."  *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).  The Supreme Court has further made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence.  *Estelle*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson*, 431 U.S. at 154; *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  On direct appeal, the appellate court determined that, in line with the California Evidence Code and state case law, the trial court properly admitted evidence of the Kutsenko shooting.  This Court is bound by the state court's interpretation of California state law.  *Bradshaw*, 546 U.S. at 76.

Moreover, the United State Supreme Court has left open the question of whether state law would violate the Due Process Clause if it permitted the use of prior crimes evidence to show propensity to commit a charged crime.  *Estelle*, 502 U.S. at 75 n.5 ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of

19

'prior crimes' evidence to show propensity to commit a charged crime."); *Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008).  As such, the Ninth Circuit has routinely found federal habeas relief to be foreclosed by § 2254(d)(1) for claims challenging the admission of evidence of prior bad acts or crimes.  *See, e.g., Larson v. Palmateer*, 515 F.3d 1057, 1066 (9th Cir. 2008); *Alberni v. McDaniel*, 458 F.3d 860, 866 (9th Cir. 2006).

While habeas relief may be warranted for the admission of prejudicial evidence if the admission was fundamentally unfair and resulted in a denial of due process, *Estelle*, 502 U.S. at 72, Sevchuk fails to make such a showing.  The Ninth Circuit has upheld the admission of prior crimes or bad acts where (1) there is sufficient proof that defendant committed the prior act; (2) the prior act is not too remote in time, (3) the prior act is similar (if admitted to show intent); (4) the prior act is used to prove a material element; and (5) the probative value is not substantially outweighed by prejudice.  *See Walters v. Maas*, 45 F.3d 1355, 1357-58 (9th Cir. 1995) (upholding state admission of prior bad acts on federal habeas review).

These factors are all present in this case.  As the Court of Appeal noted in its opinion, the incidents occurred a couple of weeks apart, and numerous witnesses identified both Isayev and Sevchuk in the drive-by shooting.  The Court also agrees with the state court that the degree of similarity was sufficient to show intent (and, on Sevchuk's part, knowledge of Isayev's intent).  Moreover, as the Court of Appeal pointed out, California Evidence Code § 352 requires the trial judge to balance the probative value of proffered evidence with its potential prejudicial effect.  Such a balancing requirement safeguards due process vis-à-vis the admission of uncharged offenses under Cal. Evid.Code § 1008.  *See, e.g.*, *Mejia*, 534 F.3d at 1047 n.5.  The record shows that the trial judge conducted that balancing analysis pursuant to § 352 before admitting the

challenged evidence.  Finally, the court instructed the jurors with CALCRIM No. 375, which

told jurors they could consider the prior uncharged act only for a specific purpose and not

generally on the question of whether Sevchuk had criminal propensities or was a person of bad

character.  For the foregoing reasons, Sevchuk cannot prevail on this claim.

C.      *Juror Misconduct* (Ground 4)

        Sevchuk also contends that he did not receive a fair trial because certain members of his

jury learned that Stepanov had been convicted before his jury returned a verdict.  In this case,

there was a joint trial, but Sevchuk, Stepanov, and Isayev all had different juries.  This was done

so that certain evidence could be introduced against one or two defendants while the jury for the

defendant or defendants to whom the evidence was not relevant could be excused.  Notably, as a

result of this procedure, the juries presumably understood that the evidence against each of the

defendants differed and that each of the defendants defended their case on different theories.

The Court of Appeal considered and rejected Sevchuk's juror misconduct claim on direct appeal

as follows:

        Defendant Sevchuk contends that the trial court erred in denying his motion for
mistrial after the jurors in his case, while still in deliberations, read a newspaper article
about the Stepanov verdict.
        The Sevchuk jury began its deliberations on February 26, 2007.  On Saturday,
March 10, 2007, the Sacramento Bee ran a story on the front page of its "Metro" section
reporting that the Stepanov jury had convicted Stepanov of second degree murder.  The
article included a photograph of Stepanov and the headline, "Woman convicted of
revenge killing."
        On the following Monday (March 12), the Sevchuk jury asked the court to clarify
its instructions on second degree murder.  Defendant Sevchuk made a "pending mistrial
motion," and asked to have the court question the jurors to see if they had seen or been
influenced by the newspaper article.  The court noted that earlier questions from the jury
had also related to second degree murder issues, but it agreed to grant defendant
Sevchuk's request to poll the jury.
        The court questioned each juror individually.  Juror No. 1 saw the headline in the
article and the word "convicted" but did not read the article.  No one else on the jury tried

21

to discuss the article with her.  Juror No. 2 did not know that there had been an article or a verdict, but was aware that the Isayev and Stepanov juries were no longer in the courthouse.  Juror Nos. 3, 4, 5, 6, 7, 10 and 11 heard someone in the courthouse mention the article and/or that Stepanov's jury had reached a verdict.  They knew nothing about the substance of the article, and none of them thought their limited knowledge would affect deliberations in any way.  Juror No. 8 reported that a coworker saw him with the newspaper, warned him not to read the Metro section and took that section from him.  Juror No. 9 said that someone riding light rail mentioned the article but did not relate the substance of the article.

Juror No. 12 informed the court that she saw a friend over the weekend who told her that there had been an article in the paper and that Stepanov had been found guilty.  Juror No. 12 replied that she "wasn't supposed to know anything," and there was no further conversation.  Juror No. 12 told her fellow jurors that morning that a friend had told her there had been an article in the paper, but did not give any further details.  Apparently, this disclosure was made after jurors wondered why they were being called individually into the courtroom.  Juror No. 12 said the jurors had noticed that the juries from the other two defendants were no longer in the courthouse.  Juror No. 12 said that her limited knowledge about the article would not affect her deliberations.

Defendant Sevchuk moved for a mistrial based on jury misconduct.  The trial court denied the motion, ruling, "There has been no showing of misconduct. I know . . . that you are inferring something from their comments that is of concern to you; but I don't make that inference.  I felt the jurors were forthright and honest.  [¶]  I don't believe that the mere fact that a couple of them know that there was a verdict in the Stepanov case, a guilty verdict, is going to contain [sic] whatever verdict, if any, that this jury reaches, so your motion for mistrial is denied."

[Sevchuk] challenges this ruling on appeal.

"While it is well settled that it is misconduct for a juror to read newspaper accounts of a case on which he or she is sitting, and that receiving impressions from sources other than evidence received at trial raises a presumption of prejudice, this presumption of prejudice may be rebutted."  A verdict will be set aside only if there is substantial likelihood of juror bias, either because the extraneous material is inherently likely to have influenced the juror, or the nature of the misconduct and the surrounding circumstances establish it is substantially likely that a juror was actually biased against the defendant.

Here, we question whether any misconduct occurred.  One juror inadvertently saw the headline and a few others reported being told of a verdict in the Stepanov case.  None of the jurors read the article itself.  One juror mentioned to others that an article had appeared, but the details were not divulged (and were not known to that juror).  Two of the jurors knew that Stepanov had been convicted, but nothing more.  If there was any misconduct, the presumption of prejudice was rebutted as there was no likelihood of juror bias.  The jurors had extremely limited information about the article and all of it related to a codefendant, not Sevchuk.  The jurors asserted that their passing knowledge of the article would not affect their deliberations or their ability to be fair.  Under these

22

circumstances, the court acted well within its discretion in denying defendant Sevchuk's motion for mistrial.

*Isayev*, 2011 WL 2848584, at *20-21.

The Sixth Amendment guarantees criminal defendants the right to a "fair trial by a panel of impartial, 'indifferent' jurors." *Irwin v. Dowd*, 366 U.S. 717, 722 (1961); *see Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir.1998). "In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Turner v. Louisiana,* 379 U.S. 466, 472-73 (1965); *see also Estrada v. Scribner,* 512 F.3d 1227, 1238 (9th Cir. 2008) ("The Sixth Amendment guarantee of a trial by jury requires the jury verdict to be based on the evidence produced at trial." (citing *Jeffries v. Wood,* 114 F.3d 1484, 1490 (9th Cir. 1997) (en banc), *overruled on other grounds by Gonzalez v. Arizona,* 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc))).

Thus, the Ninth Circuit has "consistently recognized that the Sixth Amendment prohibits jurors from introducing matters into the deliberations not present during the trial." *Fields v. Brown*, 503 F.3d 755, 793 (9th Cir. 2007); *see Gibson v. Clanon*, 633 F.2d 851, 854 (9th Cir. 1980) (explaining that  a jury's consideration of extrinsic material is a constitutional violation). There is a potential for prejudice when a juror "interjects into deliberations 'objective extrinsic facts' regarding the accused because that juror becomes an unsworn witness who is not subject to either confrontation or cross-examination." *Mancuso v. Olivarez*, 292 F.3d 939, 950 (9th Cir. 2002) (citation omitted).  No bright line exists for determining whether a petitioner has suffered prejudice from juror misconduct; therefore, reviewing courts "place great weight on the nature of

23

the extraneous information that has been introduced into deliberations." *Id.* (citation omitted).

"The inquiry into a jury's consideration of extrinsic evidence does not end at whether

misconduct occurred; upon a finding of misconduct, a *rebuttable* presumption of prejudice

applies." *Tong Xiong v. Felker*, 681 F.3d 1067, 1077 (9th Cir. 2012).

The United States Supreme Court has "long held that the remedy for allegations of juror

partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith v.*

*Phillips*, 455 U.S. 209, 215 (1982); *Remmer v. United States*, 347 U.S. 227, 228-29 (1954)

(remanding case to district court to "hold a hearing to determine whether the incident

complained of was harmful to the petitioner").

While Sevchuk may be complaining that the inquiry was done by polling the jurors in a

manner less formal than a full-fledged hearing, the United States Supreme Court does not require

the partiality hearing to be conducted in a specific manner. *Smith*, 455 U.S. at 217-18. The

Ninth Circuit has applied the *Smith* hearing requirement to a variety of situations and concluded

that "[a]s long the fact-finding process is objective and reasonably explores the issues presented,

the state trial judge's findings based on that investigation are entitled to a presumption of

correctness." *Hedlund v. Ryan*, 750 F.3d 793, 807 (9th Cir. 2014) (citing *Dyer*, 151 F.3d at 974-

75).

Here, the record shows that the trial court questioned each juror individually, after which

Sevchuk was able to argue that he was prejudiced by extraneous information. The Court finds

that the trial court's handling of the allegations of juror bias and Sevchuk's motion for a new

trial were reasonable and in accordance with clearly established federal law. The trial court's

fact finding process was "objective and reasonably explored the issues presented [and,

24

therefore,] the state trial judge's findings based on that investigation are entitled to a presumption of correctness." *Hedlund*, 750 F.3d at 807.  Sevchuk did not establish actual bias, that is "a state of mind that leads to an inference that the person [did] not act with entire impartiality." *Olsen*, 704 F.3d at 1189.  Because Sevchuk was given an opportunity to establish actual bias and the trial court's factual determinations were reasonable and supported by the record, the appellate court's decision to deny Sevchuk's claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of fact.  Sevchuk is therefore not entitled to relief on this ground.

D.    *Ineffective Assistance of Counsel* (Ground 5)

Sevchuk further alleges that his trial counsel did not adequately convey a plea offer and failed to advise him that he could be deported if found guilty after trial.  According to Sevchuk:

> On at least three separate occasions prior to trial, Petitioner was brought to court for purposes of negotiating possible plea agreements.  Petitioner's trial attorney obtained a Russian-speaking interpreter for Petitioner during the plea proceedings.  However, the interpreter visibly struggled while trying to translate to Petitioner everything that was being said during the proceedings.  The judge, the prosecutor, and Petitioner's attorney spoke too rapidly for the interpreter to be able to keep up and/or with more complexity than the interpreter could adequately convey to Petitioner.
>
> Not until getting to prison and meeting another Russian-speaking inmate did Petitioner finally become fully made aware that the prosecution and/or the trial court had offered him a sentence of between 5-11 years if he would have pled guilty and not taken his case to trial.
>
> Had Petitioner's attorney properly conveyed to Petitioner the potential length of time in prison he would face if he were to lose at trial, Petitioner would have been much more inclined to seriously consider and accept the idea of pleading guilty in exchange for the offered terms of 5-11 years rather than what potentially could be the remainder of his life upon getting convicted by a jury.
>
> Petitioner's attorney also did not advise or otherwise inform Petitioner in any manner whatsoever that if he took his case to trial and lost, rather than accept the plea offers of 5-11 years, he would face being deported back to Russia upon completing his resulting term.

Sevchuk raised this claim in his habeas petition in the California Supreme Court, which was summarily denied.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard.  *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009).  Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Sevchuk must show that his trial counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for either counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

The *Strickland* standard also applies to claims of ineffective assistance during the plea bargain process. *See Lafler*, 132 S. Ct. at 1384 ("During plea negotiations, defendants are 'entitled to the effective assistance of competent counsel.'" (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Specifically, "a defendant has the right to make a reasonably informed decision whether to accept a plea offer." *See Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) (citation omitted). Accordingly, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012); *see also United States v. Baylock*, 20 F.3d 1458, 1466 (9th Cir. 1994) ("[A]n attorney's failure to communicate the government's plea offer to his client constitutes unreasonable conduct under prevailing professional standards."). To show prejudice from ineffective assistance of counsel "where a plea offer has lapsed or been rejected because of counsel's deficient performance, [a petitioner] must demonstrate a reasonable probability" (1) he "would have accepted the earlier plea offer"; and (2) "the plea would have been entered without the prosecution canceling it or the

trial court refusing to accept it, if they had the authority to exercise that discretion under state law." *Frye*, 132 S. Ct. at 1409.

In this case, Sevchuk relies solely on his own statement in his Petition to establish the existence of a formal plea offer.  According to Sevchuk, another Russian-speaking inmate somehow later informed him that Sevchuk had been offered a plea deal that, he alleges, would have carried no deportation consequences.  He does not indicate in either his Petition or Traverse that he undertook any investigation into whether there was a formal plea offer, of which he was not earlier aware.

Sevchuk has thus failed to make the requisite showing of deficient performance based on trial counsel's alleged failure to adequately convey a formal plea offer.  *See Frye*, 132 S. Ct. at 1408 ("[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Sevchuk does not cite any evidence from the trial record to establish that a 5- to 11-year plea offer was actually conveyed to the defense.  Nor does he proffer sworn statements from the district attorney or trial counsel regarding the existence of the alleged offer.  Sevchuk's self-serving statements in his Petition and Traverse consist of multiple layers of hearsay and fail to identify the specific terms of a plea bargain.  *See id.* at 1409 ("[T]he fact of a formal offer means that its terms and its processing can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations."). Indeed, Sevchuk's vague reference to an offer of a 5- to 11-year imprisonment term if he pleaded "guilty" fails to indicate the charge to which he would have pleaded guilty.

Likewise, although Sevchuk avers that his poor English comprehension interfered with his understanding of the proceedings, the record suggests otherwise.  That record indicates that Sevchuk rejected the assistance of an interpreter for most of the trial, and he stated to law enforcement during an interview that, while he was most comfortable speaking in Russian, he spoke and understood both Russian and English.  Indeed, Sevchuk had at least two lengthy conversations with law enforcement on record, the transcripts of which do not reflect that Sevchuk had difficulty understanding the conversation.

Moreover, even assuming that the prosecutor did make such a plea offer and that trial counsel failed to adequately apprise Sevchuk of that offer, Sevchuk fails to show prejudice because he has not demonstrated a reasonable probability that the trial court would have approved a 5- to 11-year plea agreement with no immigration consequences in light of the first-degree murder charge and vicarious armed with a shotgun enhancement that Sevchuk was facing.  *See id.* at 1410 ("a defendant has no right to be offered a plea, . . . nor a federal right that the judge accept it") (citations omitted); *see In re Alvernaz*, 830 P.2d 747, 758 (Cal. 1992) (the trial court's approval of a plea agreement "must represent an informed decision in furtherance of the interests of society" that must not be "arbitrarily abdicate[d]").

Sevchuk thus has failed to meet his burden of showing that "there was no reasonable basis" for the state court's denial of his ineffective assistance of counsel claim, and he is not entitled to habeas relief on that claim either.

E.      *Joinder* (Ground 6)

Finally, Sevchuk "joins and incorporates by reference all arguments that inure to his benefit which have been or are to someday be raised by Maksim Isayev and/or Mariya Stepanov

in any federal habeas corpus or other petition(s) which already are or in the future will be filed with and heard by this Court."  Respondent contends that this pleading is improper because it "does not allege the kind of harm federal habeas is designed to redress."  In his Traverse, Sevchuk argues that a federal court has wide discretion in choosing an appropriate remedy, and the Court should exercise this discretion to prevent a miscarriage of justice in the event that his co-defendants are granted relief, which would result in Sevchuk "being more severely punished or held more accountable than the actual killer(s) of Dmitriy Paskar."

   In California state courts, appellants are permitted to join in, or adopt by reference, all or part of the appellate arguments raised by another party in the same or a related appeal.  *See* CAL. CT. R. 8.200(a)(5).  The Rules Governing Section 2254 Cases in the United States District Courts, however, do not permit such joinder arguments.  Rather, a federal habeas "petition must: (1) specify all the grounds for relief available to the petitioner; [and] (2) state the facts supporting each ground."  Rule 2(c)(1)-(2), Rules Governing Section 2254 Cases in the United States District Courts.  Pleadings from *pro se* prisoners are meant to be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  "Despite this liberal construction, *pro se* petitioners are nevertheless bound by the most basic rules of procedure with respect to their pleadings."  *Cortez v. Clark*, No. 10-cv-0147, 2011 WL 883019, at *11 (S.D. Cal. Mar. 14, 2011) (citing *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir.1987)).  "By joining in and adopting 'any' arguments that might be beneficial to him, Petitioner fails to articulate a claim, and underlying supporting facts, specific to himself."  *Id.*  Accordingly, Sevchuk's joinder claim fails

to state facts sufficient to allege a federal constitutional violation, and he is not entitled to relief on it.[6]

F.     *Evidentiary Hearing*

In his Traverse, Sevchuk further requests an evidentiary hearing for all of his claims.   A district court may not hold an evidentiary hearing on a claim for which a petitioner failed to develop a factual basis in state court unless the petitioner shows that: (1) the claim relies either on (a) a new rule of constitutional law that the Supreme Court has made retroactive to cases on collateral review, or (b) a factual predicate that could not have been previously discovered through the exercise of due diligence, and (2) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found the petitioner guilty of the underlying offense.  28 U.S.C. § 2254(e)(2). Where the failure to develop the factual basis for the claim in the state court proceedings is not attributable to the petitioner, to receive an evidentiary hearing, the petitioner must make a colorable claim for relief and meet one of the factors set forth in *Townsend v. Sain*, 372 U.S. 293 (1963).  *Insyxiengmay v. Morgan*, 403 F.3d 657, 670-71 (9th Cir. 2005).  In *Townsend*, the Supreme Court concluded that a federal habeas petitioner is entitled to an evidentiary hearing on his factual allegations if: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and

---

[6]     It should also be noted that the only co-defendant before this Court is Stepanov, and in its decision issued contemporaneously with Sevchuk's decision, she was not granted relief.  It appears that Isayev has filed a petition for relief in the Eastern District of California, *see* Case No. 2:12-cv-02551-JAM-KJN, but his case is not before this Court.

fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material

facts were not adequately developed at the state-court hearing; or (6) for any reason it appears

that the state trier of fact did not afford the habeas applicant a full and fair fact hearing. *Id.* at

670 (quoting *Townsend*, 372 U.S. at 313), *overruled in part by Keeney v. Tamayo-Reyes*, 504

U.S. 1 (1992).

As discussed above, Sevchuk has failed to assert a colorable claim for relief as to any of

his claims. *See Bashor v. Risley*, 730 F.2d 1228, 1233 (9th Cir. 1984) (holding an evidentiary

hearing is not required on issues which can be resolved on the basis of the state court record).

Because he does not cite to new laws or underlying facts that were not developed on the record

before the state courts with respect to those claims, he has also failed to satisfy his burden of

proof under 28 U.S.C. § 2254(e)(2).  And with respect to his claim that trial counsel was

ineffective for failing to convey an alleged plea offer, "[a]n evidentiary hearing is not required

on allegations that are 'conclusory and wholly devoid of specifics.'"  *Campbell v. Wood*, 18 F.3d

662, 679 (9th Cir. 1994) (citation omitted); *see also Williams v. Woodford*, 384 F.3d 567, 589

(9th Cir. 2004) ("[U]nsupported, unsworn, and conclusory allegations do not provide sufficient

basis for an evidentiary hearing").  Sevchuk's request for an evidentiary hearing must therefore

be denied.

G.      *Appointment of Counsel*

Sevchuk also moves in his Traverse for the Court to appoint him legal counsel.  While

this Court is not unmindful of the plight of unrepresented state prisoners in federal habeas

proceedings, there is no constitutional right to counsel in federal habeas proceedings.  *See*

*Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) (citing *Coleman v. Thompson*, 501 U.S. 722,

756-57 (1991)).  Appointment of counsel is not required in a habeas corpus proceeding in the absence of an order granting discovery or an evidentiary hearing.  *See* Rules Governing Section 2254 Cases in the U.S. District Courts, Rule 6(a), 8(c).  This Court may under the Criminal Justice Act appoint counsel in this case if it determines that the interests of justice so require.  28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B); *see Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983) ("In deciding whether to appoint counsel in a habeas proceeding, the district court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.").  Because this case has been fully briefed, and the Court has now considered and adjudicated it on the merits and determined that no Certificate of Appealability should be granted, this Court does not so determine.  Sevchuk's request for counsel is therefore also denied.

V. CONCLUSION AND ORDER

Sevchuk is not entitled to relief on any ground raised in his Petition, and he is not entitled to an evidentiary hearing or appointment of counsel.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** Sevchuk's requests for an evidentiary hearing and appointment of counsel are denied.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: December 8, 2015.

_/s/James K. Singleton, Jr._____
JAMES K. SINGLETON, JR.
Senior United States District Judge

34